Good morning, your honors. May it please the court, Bardas Fekili for Appellant Oscar Olivas. I'd like to reserve two minutes for rebuttal. Keep an eye on your clock. I'll try to remind you as well. Thank you, your honors. Your honor, Mr. Olivas requests this court reverse the judgment below and direct a judgment in his favor. And that's because this case turns on the proper allocation of the burden and standard of proof, something Judge Hayes below got wrong. When the government makes an administrative determination that someone is a United States citizen, it communicates to that person. It considers him a citizen. Any reasonable person can rely on that moving forward and building a life here, as Mr. Olivas did. This court's precedent in Lung, Mundaka-Vega, and other cases make clear that if the government now decides to contest citizenship, it's essentially challenging its own prior determination. And it must bear the burden by clear and convincing evidence that it was wrong all along. With the burden proper. Is there any case law that says in a habeas context, the petitioner gets the benefit of the burden under Mundaka-Vega because it relates to citizenship? Is there case law in the circuit standing for that proposition? Nothing directly on point. But let me let you know how the habeas relief plays into this. One, habeas is just an equitable remedy, just like a declaratory judgment. A habeas case is shorthand for another type of civil action where habeas is the remedy. The rules of due process don't apply differently in habeas. Mr. Olivas doesn't feel the gravity of the deprivation of his citizenship any differently because he's outside the United States seeking habeas. He also sought declaratory judgment, just like Mr. Lung did. Now, Judge Hayes heard the habeas issue first because the statute requires him to expedite that issue. But there's no logic in applying a different standard. We know from the case Scrambee-Cup that the burden can shift in habeas, so there's no- Had he proceeded on the declaratory action first, is the case law clearer that you would have the burden under Mundaka-Vega? The case law is not just clear, it is black letter at this point. You asked the court to proceed by way of declaratory action instead of habeas? We asked the court to proceed on all the citizenship claims, which included the Declaratory Judgment Act and the claim and the rate of habeas. The court bifurcated the claims. There was significant confusion and dispute about what that bifurcation meant. We thought it meant we were going forward on all of the citizenship claims. The court seemed to indicate that he was just hearing the habeas matter. And then later on the declaratory judgment matter said he didn't have a jurisdiction under 1252G. Now, that doesn't make a lot of sense, again, to us, Your Honor, because, again, the writ is just an equitable remedy. A habeas action is just a civil action like any other. So we did make that argument. And it makes no difference that Mr. Olivas is outside the United States seeking habeas either. He was entitled to do that. Under Rivera, it's very clear that you may seek a habeas from outside the United States. And it would lead to anomalous results because he was forced to bring this action. He begged for many years to be put into removal proceedings, to be put in a situation like Mr. Mendoca-Vega. And the government concedes that it failed to do that. He was forced then to seek this action. He was entitled to seek the declaratory judgment relief and the habeas relief. And it would lead to anomalous- Had the government acted to file whatever it is that they need to file in order to get him before an IJ, then he would be on the same route as the petitioner in Mendoca-Vega. That's exactly right. And so then it would lead to an anomalous result to hold the government to a lesser burden here when he tried to get into that position and only was forced to file this action from outside the United States. Now, had the government or had the Judge Hayes properly allocated the burden of standard of proof, we're left with no evidence. Mr. Olivas was forced to prove 40-year-old facts as best he could. And with the burden on him, he got this thing narrowed down to two and a half months. His presence is here on November 3rd, 1969, two and a half months after his birth on August 10th, 1969. But the burden's not on him. Properly allocated, the burden is on the government. And they have no Mexican birth certificate. They have no even circumstantial evidence of someone in October of 1969 saying, I'm the next door neighbor and he lived near me. There's no evidence whatsoever. Their entire case relies on hearsay. And the judge did not abuse his discretion in declining to admit the hearsay evidence in this case. There's no exception that applies. And it's black letter law, again, that you can't make your case under clear and convincing standard by impeachment evidence. The standard for clear and convincing evidence is a clear conviction without hesitation of the precise truth of the matter in issue. There is no way on this record to meet that standard properly applied. And that's why this is not just a remand for new findings, this requires a judgment in Mr. Olivas' favor. That, I'll reserve my time unless you have other questions. Thank you. Good morning, your honors. May it please the court, Rebecca Church on behalf of the United States. In this case, petitioner was in a habeas corpus proceeding. The court applied the correct standard. Well, he was in a habeas corpus proceeding, but the heart of the matter involved his citizenship. So why doesn't the burden of proof, the whole framework, the burden shifting framework in Nacavega apply in this particular case? You've got denaturalization cases, you've got removal cases, expatriation cases. All those cases involve the government bearing the burden of proof by clear and convincing evidence. Why doesn't that apply here, even though the procedural vehicle that the district court proceeded under was a habeas petition? Well, denaturalization cases would have a different standard of proof. And this all turns on the assertion that petitioner was making that there were prior determinations as to his citizenship in this case. And the government's position is that there were not. In this case, the petitioner had a late registration birth certificate issued by the state of California, which the court found to be not credible for multiple reasons. But before getting to the findings, who's got the burden of proof? Doesn't this relate to his citizenship? Because you're trying to take the citizenship away, saying that it was fraudulently issued. And he's saying, oh no, I'm in fact a citizen. That is the heart of the case, right? I would frame it differently. It is not the heart of the case that we're taking citizenship away from this individual. He was essentially an alien arriving in admissible. That's the issue. Is he an alien or not? And we're all here trying to figure it out, right? Right. It has to do with his alienage. Now, tell me what happened. There was a notice to appear that was issued. And as I understand it, the government was then required to basically file it in order to trigger that path through the IJ, BIA, and then coming here to the Ninth Circuit, but the government didn't do that. Is that correct? That is correct. And that's despite a lot of pushing and efforts on his part, right? Yes, that's correct. So had the government acted properly under the mandate that it was supposed to do under the statute, would the burden then be on the government to prove his alienage by clearing convincing evidence? He would have then been in removal proceedings based on grounds of inadmissibility. And in that case, he would have the initial burden and- That's the burden shifting, right. So that's the burden shifting framework of Mundaka Vega. That would apply in that instance, right? Mundaka Vega is distinguishable from that context. It wasn't a removal proceeding based on inadmissibility. Mundaka Vega was in a denaturalization context. All right, let me back up. Had the government done what it's supposed to do, who would bear the burden of proof and what would that burden be? It depends on which avenue, which there are multiple avenues available to petitioner to challenge his determination of alienage. But if it was in removal proceedings on grounds of inadmissibility, it would have been his initial burden and then it would have been rebutted by the government. By clearing convincing evidence. When rebutted, then yes, yes, sorry. And do you agree, if we were to conclude that that applies here, that the government would not be able to meet its burden by clear and convincing evidence based upon the factual record here? No, not at all. So what's the evidence that would allow for a finding of clear and convincing evidence or really no clear error? So in the record, there is evidence of foreign birth in the form of first, the petitioner's mother testified on direct examination. Is there a hearsay exception to that? That was elicited by petitioner on direct examination without a limiting instruction or a objection as to hearsay regarding the mother's testimony that she told the consular that he was born in Mexico. The statement itself seems to be inadmissible hearsay. What was the testimony that you say was elicited at trial without objection? That was the, the mother testified and it's in the record at 23, ER 23 at six and supplemental excerpts of the record, 35 to 36, that the mother testified that she told the consular employee. Right, she's repeating the hearsay statement, right? So I'm still looking for the exception. The statement itself is hearsay. I don't know what exception applies. I don't think there are any exceptions, but you're free to articulate your best exception under the hearsay rule. And then on the stand, she repeated that hearsay statement. Does that then change the hearsay nature of the statement? No, but there was no hearsay objection as to her testimony. So it would be waived if there is hearsay. And the context of it was that it was given to allege that that statement was coerced and the court did examine that and found that it was given voluntarily. And that was not challenged on this appeal. And I also want to add that we have- I'm not sure that I really quite understand your theory. So you, outside of court, tell somebody something and that's not admissible. In court, you say, well, yeah, I told him that, but it's not really true. In the absence of a hearsay objection, then the government gets to use the truth of the statement that was stated out of court. That's the government's theory? Yes, because it was elicited by petitioner and because the court found that it was voluntary. But I do want to add that there's additional evidence of foreign birth in the record. But I thought it was elicited by petitioner for the purpose of- Refuting it. Refuting it and showing also lack of voluntariness and lack of correctness. So if the petitioner wasn't offering it for the truth of the matter asserted, what's the issue about where an objection would need to be made? He was offering it as context for the voluntariness issue and the refutation. Yes, and the court found that it was voluntary. Right. And it's additional evidence of foreign birth, but there is additional evidence of foreign birth in the record as it stands right now. I know that there were some documents that basically repeated the hearsay statement. Do you have anything independent of that that would then meet the government's burden, assuming we say that the government bears the burden in this case? Yes, Your Honor. And that comes in the form of the court found that petitioner's mother and two of the aunts testified that petitioner's grandmother was present at the time of the birth. And that's at ER 32 at 12 and ER 39. The court also found that there is consistency between the petitioner's grandmother's visa petition, which was admitted into evidence, which indicates that she was in Mexicali, Mexico until November of 1969 when she moved to Los Angeles. November of 1969 is approximately three months after the petitioner was born. That is consistent with petitioner's mother submitting a application for a social security number in November of 1969 as well. So the court found that the consistency between those two documents from petitioner's mother and grandmother. That's a problem if the petitioner bears the burden because it undercuts their affirmative proof because the court found that the testimony was suspect. But what affirmative evidence did the government present that would demonstrate that he was in fact born in Mexico? I would say that that is evidence of foreign birth, that the consistency shows that petitioner's mother was not in the United States until approximately three months after her birth, after the birth. The mother says the birth was in the United States. The mother says grandma was present. Grandma's documentation shows grandma was not present in the United States until three months later and that's your evidence. Along with the first documentary evidence that can show that the petitioner's mother was in the United States near the time of the birth is consistent with that date of November 1969. Where's the dividing line between satisfying something by a mere preponderance and satisfying something by clear and convincing evidence? It's more likely than not versus substantial evidence. I know what it means. How does a finder of fact making that determination know where to draw that line? Well, I have full confidence that Judge Hayes knows how to draw that line. He's a very experienced judge and I think that what he does is he weighs all of the evidence  which are not challenged here on a petition. The credibility determinations went to all of the petitioner's evidence, all of the testimony, including the birth certificate and those are not challenged on appeal. So if it were to be sent back, the petitioner couldn't need to. Ultimately, where did the district court place the burden? On the petitioner, preponderance of the evidence. And if the district court got the burden wrong, wouldn't that change the whole picture? Because you're here pointing to the absence of affirmative evidence instead of arguing your own affirmative evidence. And so I think the allocation of the burden, if we determined that it was wrongly placed on the petitioner instead of on the government, would that warrant then a remand for a do-over? Well, we don't see our argument as arguing the absence of evidence. I believe that the evidence that the court found and the testimony that we're relying on is affirmative evidence of birth. But... So you're saying that if this panel concludes that the burden should have been on the government and that should have been by clear and convincing evidence, you still think that there's enough on this record to affirm? I do, Your Honor. And I also would say that additionally, the petitioner would have some burden, either prima facie or rebutting substantial evidence, which they cannot meet because all of the evidence that they submitted was found to be not credible or not showing birth within the United States, and that hasn't been challenged on appeal. All right. Thank you. Thank you. Counsel, when you sat down before, you said we should have a judgment, not a remand. But as I hear the government's evidence, we have their evidence was that mother said that grandma was present at the birth. Documents show that grandma was not present or was in Mexico at the time of the purported birth, not present till the U.S. later. So isn't that some evidence? So even if we agree with everything else you've argued, doesn't that mean that there should be a remand so that the district judge can decide whether that evidence is clear and convincing? Respectfully, no, Your Honor. As a matter of law, that cannot rise to this heightened, this intermediate, what they call this heightened burden. Why not? Standard. The definition that the Supreme Court has endorsed in Kruzan by Kruzan for clear and convincing evidence, where you draw the line to your question, Your Honor, is a clear conviction without hesitancy of the truth of the precise facts and issue. What the government points to is impeachment evidence that grandma was there in the room at the time of the birth. Now, maybe that's impeachment evidence, but impeachment evidence is not affirmative evidence of the truth. And even if it is, it's part of some thin web of circumstantial evidence. Well, I mean, that is affirmative evidence, isn't it? You may say it's not very strong, but it is affirmative evidence, not mere impeachment. Am I wrong? So accepting that is true, Your Honor. I do think it's merely impeachment evidence, but accepting that is true. It is circumstantial evidence, and it hardly can lead to this standard that I just quoted. Precisely when the evidence is clear in the record, that November is also when Oscar's mom went to work. Someone had to watch baby Oscar. It's precisely when grandma's other grandson was born. Someone might have had to come over to watch him. There's a lot of things happening in November of 1969, and it does not lead to this clear conviction without hesitancy of the truth of the matter. It can't as a matter of law. The other way, the other reasons that remand is not justified is because this was all, everyone's had a fair opportunity to do this. Mr. Olivas has been for eight years banished and exiled and stateless. There is nothing more that's gonna come out. No new evidence is gonna come out on remand to show that Oscar was in Mexico in September or October. It's just not gonna happen. And so because everyone was on fair notice, because the evidence on the record, as a matter of law, cannot make that standard, judgment as a matter of law is appropriate. I would only add that, just to a point that was made earlier about the testimony, acknowledging your own testimony doesn't, acknowledging your own hearsay statement doesn't make the statement hearsay. In Tofolo Cardenas, a case we cited, a person admits she made a statement to an FBI agent. She says, I made it, I made it because I thought it was in my own self-interest. I recant it now. It was still hearsay. So there's still a double hearsay problem, and there's no need to object to it. And the judge was very scrupulous in analyzing all, Judge Hayes was scrupulous in this regard, all the references to hearsay, to the hearsay statement. He went through as many as he could find and said, I don't admit those or consider those for its truth. So you have to assume that he would have done the same thing here. If he had been in removal proceedings, he would have bore the initial burden. The birth certificate and the prior determinations make that initial burden. It then shifts the burden to the government by clearing convincing evidence. And that's just a standard they can't meet as a matter of law. Thank you. Thank you, Your Honors. The matter is submitted.
judges: Schroeder, Nguyen, Simon